CASE 11.—ACTION BY THE VARNEY ELECTRICAL SUPPLY
COMPANY AGAINST JOHN A. CARTER ON A CON-
TRACT FOR ELECTRICAL SUPPLIES.—February 3,
1909.

# Varney Electrical Supply Co. v. Carter

Appeal from Larue Circuit Court.

I. H. THURMAN, Circuit Judge.

Judgment for defendant, plaintiff appeals—Reversed.

1.  Evidence—Parol Evidence Affecting Writings—Previous Ne-
    gotiations.—The purchaser of equipment for an electric light
    plant cannot be allowed a counterclaim against the price for
    breach of an oral representation that the amount of wire
    sold would be sufficient to install the plant, made before the
    execution of a written contract, where there is no fraud or
    mistake.

O. M. MATHER and CLAUD HUDGINS for appellant.

WILLIAMS & HANDLEY for appellee.

OPINION OF THE COURT BY JUDGE HOBSON—Re-
versing.

On February 12, 1907, the Varney Electrical Sup-
ply Company entered into a written contract with
J. A. Carter, by which it agreed to sell him a bill of
electric supplies for $4,561.50.. The goods were de-
livered, and after this, on March 14th, he ordered
from it another bill of supplies, amounting to
$734.61.   He settled for the goods delivered under
the first contract, but declined to pay for the goods
delivered under the second order.   This suit was
brought to recover therefor, and also for certain
goods delivered under the first contract, which were
not included in it, but which Carter had kept and

used, making the total amount sued for $760.01. Car-
ter by his answer pleaded an offset and counter-
claim amounting to $1,238.88. . He alleged:    That
when he entered into the contract of February 12,
1907, the plaintiff by its agents, in order to make the
sale, represented that it had measured all the streets
of Hodgenville and had ascertained the amount of
wiring necessary for the electric plant he proposed
to put up in that town, and the agent represented
to him that the material called for in the contract
was all that was necessary; but that it turned out
that there was not enough wire, and that he was com-
pelled to purchase $1,238.88 worth of wire to install
the plant; that he would not have made the contract
but for the representations of the agent to him; that
these reprentations were false and fraudulent; and
that the plaintiff was a nonresident of the State.   An
answer was filed controverting the allegations of the
answer, and on a trial of the case the jury found a
verdict for the defendant in the sum of $1,193.79
with an offset of $693.79, the amount allowed on
plaintiff's account.   The court entered judgment on
the verdict, and the plaintiff appeals.

The written contract is in these words:  "Louis-
ville, Ky., February 12, 1907. · J. A. Carter Electric
Light Plant, Hogdenville, Ky.—Gentlemen: We pro-
pose to furnish you the following material and ap-
paratus as described, and at prices here below:
(Here follows a list of things to be furnished.)  The
above material is all guaranteed N. C. first class.
We propose to furnish the above f. o. b. Hodgen-
ville, for the sum of $4,561.50, fifty per cent. cash
S. D. B. L. A. 25 per cent. 30 days and 25 per cent.
60 days.   Varney Electrical Supply Company, by
John P. Gossett.  Accepted by John A. Carter. Op-
tion on above till March 20th, unless notified when
shipping will begin."

It is conceded that the Varney Electrical Supply
Company furnished everything named in the con-

tract, and that the articles which it furnished were not defective. It turned out that the wire which was included in the bill was not half enough to equip the plant, and Carter showed that he had to buy of another concern wire amounting to $1,238.98 to complete the plant. He testified, in substance, that he told the agent that whether he would buy depended upon the cost, that the agent said he could tell him the cost of the plant within 50 cents, that he told the agent that if it was going to cost him too much money he would not get into it, that the agent then said to him that the plant complete with everything ready to turn on the lights could be bought for $4,561.50, and that relying on this statement he entered into the contract, and when he got the goods and commenced stringing the wire it gave out before he got halfway from the power house to the courthouse of the town. That the agent made these statements to him he proved also by several other witnesses, and, if the defendant is liable for the representations of the agent as to the amount of wire that would be necessary to install the plant, the verdict should not be disturbed; but to impose such a liability would be to entirely ignore the rule that, where parties have deliberately put their contract in writing, the writing supersedes all previous parol negotiations, and is the measure of their obligation. The written contract in this case is simply a proposition to sell certain articles and so much wire. It is not a contract to furnish what would be necessary to install an electric light plant at Hodgenville. There is not a scintilla of evidence of fraud or mistake. To avoid a written contract there must be not only a plea of fraud or mistake, but the plea must be sustained by proof. There is no evidence that Carter was in any way imposed upon in the execution of the contract, or that he did not understand the writing when he signed it. It is not complained that the agent misrepresented to him the contents of the writ-

ing. His whole claim rests upon the ground that the agent said certain things to him before the writing was drawn, and upon these statements of the agent he predicates his counterclaim for the cost of the additional wire. How much wire would be required would depend upon the distance to be covered by the lines, and he could measure the distance and determine this as well as the agent. The contract was made at Hodgenville, and he knew the agent had no better means of knowing about it than he had; that is, it was a physical fact on which one man could inform himself as well as another. The agent who talked with him was a drummer, a commercial traveler, who forwarded the proposed contract to the house for approval, and, if Carter desired to hold the house upon a warranty that the wire named in the contract would be sufficient for the plant, it should have been included in the writing, so that when the house came to act upon the contract and approve it it could act intelligently. See Mathews Apparatus Co. v. Renz Henry, 61 S. W. 9, 22 Ky. Law Rep. 1528. To allow a counterclaim of this sort to be maintained, where the parties have put their engagement in writing, would be to treat the agent's statements as warranties, and to ignore the rule that the parol negotiations leading up to the written contract are merged in it. On the evidence offered by the defendant the court should have dismissed the entire counterclaim for damages on account of the wire bought by Carter to install the plant. Worland v. Secrest, 106 Ky. 711, 51 S. W. 445, 24 R. 363.

Judgment reversed, and cause remanded for a new trial.

### , ON REHEARING.

In stating that the amount of the counterclaim was $1,238, the court had in mind only that part of the counterclaim which was in controversy on the ap-

peal, and was based on the shortage in the wire. In stating that it was conceded that the company furnished everything named in the contract, and the articles which it furnished were not defective, the court had in mind only that part of the counterclaim which it was discussing; that is, so much of it as was based upon a shortage in the wire. The court did not pass on the question whether the other things were defective, or whether anything was short that was called for in the writing, outside of the wire which was the subject matter of the appeal. The opinion of the court in no manner determined whether the defendant may recover damages on the other items of his counterclaim. These matters are left to be determined by the circuit court on their merits upon a retrial of the case.

Petition overruled.