CASE 87.—ACTION BY VICK ALLEN AGAINST H. C. NEALE
AND OTHERS.—Oct. 5, 1909.

## Allen v. Neale, &c.

Appeal from Graves Circuit Court.

R. J. BUGG, Circuit Judge.

Judgment for defendant, plaintiff appeals.—Reversed.

Corporations—Officers—Liability for False Statements.—Officers
of a corporation to escape liability under Ky. St. 1909, Sec.
549, making them liable for knowingly causing to be published any false statement of the condition of the corporation, must exercise reasonable diligence, and must be presumed to know all the facts which ordinary diligence would have made known to them, and may not close their eyes to the existence of facts which they ought to know, and where the statements made by them are false, and where they so give out statements which are false, persons dealing with the corporation may recover from them the damages suffered by relying on them.

ROBBINS & THOMAS for appellant.

#### AUTHORITIES CITED.

Kentucky Statutes, Section 549; Shipp v. Commonwealth, 19
Reporter, 634; Trimble v. Reed, 17 Reporter, 494; Trimble v.
Ward, 17 Reporter, 508; Trimble v. Reed, 19 Reporter, 604; Ward
v. Trimble, 19 Reporter, 1801; Prewitt v. Trimble, 92 Kentucky,
181.

W. J. WEBB for appellees.

Questions made and authorities relied upon in order to sustain
this action, it was incumbent on appellant to establish that appellees knowingly published and gave out statement that was
false in a material respect by reason of which appellant was induced to purchase the stock. Kentucky Statutes, Section 549.

This is not a case of recission, and appellant must establish that false reports were knowingly made by appellees. Prewitt, Trustee, &c. v. Trimble, 92 Ky. 183.

The case having been submitted upon the issues in the pleadings, and the jury having found in behalf of appellees, they are bound by the verdict.

OPINION OF THE COURT BY JUDGE BARKER—Reversing.

This action was instituted by the appellant, Vick Allen, to recover of the appellees, who are the officers and directors of the May Pants Company, the sum of $1,500 lost by him in the purchase of worthless stock in the company. The action is based on section 549 of the Kentucky Statutes of 1909, which is as follows:

"If the directors or officers of any corporation shall knowingly cause to be published or given out any statement or report of the condition or business of the corporation that is false in any material respect, the officers and directors causing such report or statement to be published or given out, or assenting thereto, shall be jointly and severally individually liable for any loss or damages resulting therefrom."
In substance, the petition charges that in January, 1907, the appellant bought ten shares of the capital stock of the May Pants Company from one Harve Harris, for which he paid the sum of $1,500; that at the time he bought the stock it was absolutely worthless. It is also charged that the appellees were president, vice president, general manager and secretary of the May Pants Company, and had its business under their control in their charge; that in November, 1906, ·a short while prior to the purchase of the stock, the appellees made and published and gave out and assented to the giving out of a false and fraudulent

statement, whereby it was made to appear that the common stock of the May Pants Company was worth $161 per share; that at the time this statement was published and given out it was false in a material respect, and, instead of being worth $161 per share, was absolutely worthless; that the appellees( defendants) made and published this false representation for the purpose of deceiving the public as to the true value of the stock. All of the material allegations of the petition were denied, and a trial before a jury resulted in a verdict for the defendant (appellees), and from that judgment this appeal has been prosecuted.

It is both conceded by counsel and abundantly established by the evidence that on November 1, 1906, the officers of the corporation had drawn off a trial balance or statement of the affairs of the company, which showed that the common stock was worth $161 per share. It is also conceded by counsel and shown by the evidence that at this time the stock was worth nothing. In January, 1907, when the appellant was investigating the wisdom of purchasing the stock from Harve Harris, he was shown the statement of November 1, 1906, and he claims that several of the defendants—notably the president, Bowden—told him that the stock was worth $161 per share, and that he relied on the truth of these statements in making the purchase. In December, 1906, C. A. McDonald, who was the general manager of the corporation, resigned and went to California for his health. In May, 1907, another trial balance was taken from the books, and another statement was made showing that the corporation was still in a flourishing condition, and that the stock was worth something more than $161 per share. In August, 1907, the company

collasped wholly, and, as said before, it is now conceded that on the 1st of November, 1906, and at all times thereafter, the corporation was wholly insolvent and the stock worthless. ,

There is no sort of doubt that on the 1st of November, 1907, all the defendants knew McDonald had padded his statements to the extent of about $20,000 so as to make it appear to be more successful than it was, and thus satisfy the stockholders and keep them so encouraged that they would indorse the paper of the company and sustain its credit in bank. It is insisted, however, that this was so small an amount that no one imagined that it seriously affected the solvency of the corporation, and that, in spite of the known fact that the statement was falsely and fraudulently padded, they all thought the corporation was abundantly solvent and making money. After the resignation of McDonald, E. G. Minton, who had theretofore been assistant bookkeeper of the corporation, was made general manager. On May 1, 1907, Minton made a statement of the assets of. the corporation, but, in order to protect himself from being put in what he considered a false attitude with reference to the corporation, he drew up a memorial of the facts which he required the president and vice president to sign. This shows that these officers thoroughly understood that McDonald had falsely and fraudulently padded the statement given out in November, 1906. It is as follows:

"This is to certify that we have been advised by E. G. Minton that the above statement represents the true condition of the May Pants Company's business on May 1, 1907; also, that C. A. McDonald severed his connection with said company on or about December 1, 1906, at which time he advised us, as well as

E. G. Minton, that the stock of the said May Pants Co. was watered to the extent of 10 per cent., or, in other words, was represented to be 10 per cent. more than it actually invoiced. Since the organization of the company, and up to about December 1, 1906, it had been the duty of Mr. McDonald as general manager of the company to invoice the merchandise stock and other property of the company, and report the results of same to the directors. When we had been advised by Mr. McDonald that the stock had been watered to the extent of 10 per cent., we felt that it would be an easy matter to add a small additional profit to our goods and work this out, but to our great surprise we are advised by E. G. Minton that in invoicing the stock on May 1, 1907, he finds the above to represent the true condition. As president and vice president of the company, we feel it our duty to devise plans and means, if possible, to get the company on a sound financial basis, and, in order to do this, it will be absolutely necessary that the true condition be held in the strictest of secrecy. We have every reason to believe that the business can be gotten on good sound financial basis, and for this reason only are we to hold the matter as a secret. We feel in doing this that it is best for the company and every stockholder connected with it. We are also advised by Mr. Minton that the books of the company will naturally have to show an excessive amount of merchandise on hand, in order that the statement recorded thereon, under date of May 1, 1907, will show the company in good sound financial condition. This we have requested him to do, as it will be absolutely necessary for the protection of all concerned. This statement is written at the request of E. G. Minton, and in case of death to either or both of us would serve as an

explanation on his part for remaining silent, and his reason for doing so.  Signed May 6, 1907.  Ben C. Bowden.  H. C. Neale.''

Upon the trial of the case the court instructed the jury as follows:

''The court instructs the jury that if they believe from the evidence before plaintiff bought his stock that the defendants, H. C. Neale, B. C. Bowden, E. G. Minton and C. A. McDonald knowingly caused to be published or given out whilst officers or directors of the May Pants Company any statement or report of the condition or business of that corporation that was false in any material respect, or you believe from the evidence that any of the above-named directors or officers in said company knowingly conveyed to plaintiff, Vick Allen, any statement or report of the condition of the business of said corporation that was false in any material respect before said plaintiff bought his stock, and you further believe from the evidence that, by reason of any such statement or report, the plaintiff was induced to and did buy stock in said May Pants Company in January, 1907, and that the value of said stock at said time was of less value than paid for by plaintiff, then you will find for plaintiff the difference, if anything, between what he paid for the stock and what was the real value of the stock at said time not exceeding the sum claimed in the petition, $1,500, and your finding, if against any of the defendants, to be against those of said defendants making such report or statement, and you will find for any one or more of the defendants unless you do believe they made such report or statement.''  This instruction does not embrace the whole law of the case. City of Franklin, etc. v. Caldwell, 123 Ky. 528, 96 S. W. 605, 29 Ky. Law Rep. 935, involved

the liability of the directors of a banking corporation
for declaring unearned dividends, under statutes simi-
lar in principle to that at bar. There the statute pro-
vided for the liability of any director or directors of a
bank who knowingly violated or permitted an officer or
employe of the bank to violate any provision of the
law relating to banks. And it was insisted that, in-
asmuch as the directors did not knowingly declare
dividends which had not been earned, they were not
liable.

In discussing this phase of the case we said: "To
fix the liability of directors of corporations by the
strict letter of section 548, Ky. St. 1903, and make
them liable for all debts of the corporation if they
declare any dividend when it is insolvent, or which
would render it insolvent, although in declaring the
dividend they acted in good faith based on an honest
belief in the correctness of the statements made by the
cashier and other officers of the corporation, would
be giving to this statute an interpretation not intend-
ed by the legislative department in its enactment.
This section of the statute should be so construed as
to limit the liability of directors to the amount of the
dividend declared when the facts show that in de-
claring it they had acted in good faith, and have used
ordinary care and diligence in the conduct of the
affairs of the institution. This section, when so con-
strued, is not in conflict with, and should be read in
connection with, section 598 (section 2187). There
is no reason why directors of banks should be held
to a less accountability than the directors of other
corporations; but, if section 598 is construed to meet
the views of counsel for appellee, bank directors
would be virtually exempt from liability, however
careless they might be in the management of the af-

fairs of the bank.  The directors of banks are the only
persons who can declare dividends, and section 596
(section 2185), before quoted, provides when they
may declare dividends; and, if in violation of this
statute a dividend is declared, the directors will not
be permitted to shield themselves from liability upon
the ground that they did not knowingly violate its pro-
visions.  It is the duty of bank directors to use ordi-
nary care to acquaint themselves with the condition
of the business of the bank, and to exercise reason-
able control and supervision of its officers.  That
which they ought by proper diligence to have known
they will be presumed to have known in a con-
test between the corporation and those who
do business with it, and have the right to believe that
its directors have exercised ordinary care and pru-
dence in the management of its affairs.''  So in the
case before us it was the duty of the officers and di-
rectors of the May Pants Company to exercise reas-
able diligence to understand its condition, and they
must be presumed to know all the facts relative to the
condition of the corporation which ordinary diligence
on their part would have made known to them.  Offi-
cers and directors of corporations may not close their
eyes to the existence of facts which they ought
to know and then say they do not knowing-
ly make false statements,  if the statements made
by them are false.  And, if they give out statements
which are false in a material respect, those persons
who deal with the corporation, or buy its stock based
upon such reports, are entitled under the statute to
recover for what ever damage they suffered by reason
of having relied upon the statements so made and
published.  The trial court should have added to the
instruction given by him the principle above enun-

ciated with reference to the diligence incumbent upon officers and directors in acquiring information of the condition of the corporation for the purpose of making and publishing statements as to its financial condition and the presumption of law as to their possession of such knowledge.

We do not mean to require of the officers and directors of corporations that they should be expert bookkeepers or financiers, or that they should be infallible in the accuracy of the conclusions reached by them. But we do mean to hold that they shall use ordinary diligence and perspicacity in informing themselves of the true condition of the corporation under their control.

Judgment reversed for proceedings consistent with this opinion.