## Long v. Douthitt.

(Decided February 23, 1911.)

### Appeal from Graves Circuit Court.

1. Corporations—Sale of Stock—Right to Sue Director for Deceit.— The purchaser of stock from a director of a corporation, who was induced to purchase by reason of representations made by the director as to the value of the stock, may sue to recover the difference between the actual and represented value of the stock; and if the director knew or by the exercise of reasonable diligence could have known that his representations were false, he will be liable.

2. Corporations—Duties of Director.—The director of a corporation is required to exercise such diligence to understand the condition of the corporation as an ordinarily prudent man would use in the management of his own business under similar circumstances.

W. J. WEBB and SPEIGHT & DEAN for appellant.

WHEELER & HUGHES and ROBBINS & THOMAS for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

The appellant Long was a stockholder and director in the May Pants Company of Mayfield, Kentucky, and in October, 1905, sold to the appellee, Douthitt, twenty-three and one-half shares of stock for $141.50 per share. This suit was brought by Douthitt to recover the amount so paid, upon the ground that the stock was worthless at the time of his purchase, and that he had been induced to buy it by the guaranty and representation of Long that it was worth the price paid. Upon a trial, he recovered a judgment for $2,673.00, and this judgment we are asked to reverse for errors in the admission of evidence and in giving and refusing instructions.

We may at the outset say that although the pleadings presented several issues, there was no issue of fact made by the evidence except the one relating to what was said by the parties in reference to the value of the stock at the time and before it was purchased.

The appellee testifies that the stock was worthless at the time of his purchase and the appellee was not asked to and did not deny this fact. Nor did he dispute that at the time of the sale and for some years before he was a stockholder and director in the corporation. The appellee testifies that:

"At the time the trade was consummated, my brother and I were standing there about the bank, and Mr. Long approached me and asked: Had I thought anything more about the trade; and I told him I hadn't thought much more about it. So, my brother asked him what the stock was worth, and he said, it was worth $141.50 a share. He says: Is it worth that on the books, Zack? Mr. Long says: Yes, I am a director in the concern, and know what I am talking about, and I guarantee it to be worth $141.50 per share. So, I traded with him then.

"Q. Tell the jury what you said to him after that—tell what you said? A. I told him if he would guarantee the stock to be good, to be worth that, I would accept his proposition. Q. I don't care anything about the proposition—the trade was closed then, was it? A. Yes, sir."

The appellant denied that he guaranteed the stock to be worth $141.50 or any other sum, or that he made any representations concerning it except as appear in the following answers:

"A. Yes, sometime in November, myself and Dr. Carney were standing in the door, standing there in the buggy store, and Mr. Douthitt came along, and we had a

few words. He said that he had moved to Paris, Tennessee, and wanteu to sell me his home upon South Eighth street, I believe it was. I told him I didn't know as I wanted to buy any house. I told him I might trade for it. He asked what I would trade him; and I told him some May Pants stock. He asked me what the stock was worth, and I told him I didn't know but I thought it was worth $141.50 on the books, I would not be positive. I says, you can go and see for yourself. I asked him what he asked for his house and lot and he said $3,000.00. I told him I didn't think it was worth that, but I told him I might give him $2,750.00 in stock at the book value, that he could investigate—to go himself and ask Mr. Minton, the book-keeper, what it was worth. Q. That is what took place? A. Yes sir. Q. You made the statement that the book-value was $141.50? A. I told him I thought it was. Q. Did he come back? A. Yes, he went off and was gone about 25 or 30 minutes, and then come back. Q. When he came back in 25 or 30 minutes, what took place? A. He come back and said he had investigated and found out it was worth $141.50, and says, I will trade with you.''

Both parties were corroborated in their respective statements by witnesses who testified that they heard what took place; and if no error of law was committed to the prejudice of appellant, there is no reason why the finding of the jury upon the disputed issue of fact should be disturbed.

The first error assigned by counsel for appellant is that Turner, Allen, Wright and Gardner were permitted to testify that the stock was worthless in 1905, although each of them said that their opinion was based upon information that had come to them in 1907 and that personally they did not know anything about the condition of the corporation in 1905. This evidence was incompetent, but it was not prejudicial, because it was not denied by appellant or any witness in his behalf that the corporation was insolvent and the stock worthless in 1905. In short, as appellant virtually admitted everything that these witnesses testified to that is now complained of, it is manifest that their evidence did not in any way prejudice his defense, because as before stated he only made one defense.

In one instruction the court told the jury in substance that if they believed from the evidence that at the time the appellant sold the stock he represented to the appel-

lee that it was then worth $141.50 per share, or any sum materially more than its actual value, with the intention that appellee should rely upon the representations, and that he did rely upon them, and that appellant knew or by the exercise of reasonable diligence could have known that his representations were false, then the jury should find for appellee in damages the difference between the real value and the represented value of the stock.

In another, the jury were told that if they believed appellant guaranteed that the stock was worth $141.50 per share, and that it was worth less than that amount, they should find for appellee the difference between the guaranteed and actual value.

The jury were further instructed that "the defendant (appellant) as director of the corporation was required to exercise reasonable diligence to understand the condition of the company, such as an ordinarily prudent man would use in the management of his own business under similar circumstances, and if you believe defendant exercised such care, the law is for the defendant and the jury should so find; unless you believe the state of facts set out in the instructions one and two."

No objection is made to the instruction authorizing a recovery if the jury believe appellant guaranteed the value of the stock, but the other instructions are assailed upon the ground that under them the jury had the right to find against the appellant if they believed from the evidence that appellant knew or by the exercise of reasonable diligence could have known that his representations as to the value of the stock were false. It is argued that the jury should have been instructed that the appellant was not liable unless he knowingly, falsely or fraudulently represented that the stock was worth $141.50; while under the instructions given he was made liable if as a director he knew or by the exercise of reasonable diligence could have known that his representations were false

In Allen v. Neale, 134 Ky. 690, a question similar to the one now being considered was before the Court, and the ruling was adverse to the contention of counsel for appellant.

In Ligon v. Minton, 125 S. W., 304, Minton, a director in the May Pants Company, was sued by Ligon to recover the amount paid for stock in this corporation. The ground of the suit being that Minton as a director had signed statements issued to the public, misrepre-

senting the condition of the affairs of the corporation, on the faith of which statements Ligon was induced to purchase the stock. In the course of the opinion the court said:

"The published statements made by the directors of a corporation were representations to the public concerning its affairs, and the directors promulgating the statement will not be heard to say that it was innocently made if in fact it was materially false; they are held by our statute to know that which it was their legal duty to know, and which they would have known but for a failure to discharge their duty; that unequivocal statements of fact in such a statement, purporting to be of the knowledge of the directors, and being of facts presumably within their knowledge, will be deemed fraudulent in law, if materially untrue. One whose duty it is to know, and who speaks as if he had discharged that duty, is held in law to know, and will not be heard to say against those relying on his statement that in truth he did not know. He should speak the truth or be silent. The statement was issued to the public. The latter were invited and expected to deal with the corporation, and concerning its affairs, in reliance upon that statement. When one of the public does deal with the corporation, or with one of the directors, buying shares of the stock of the corporation at a figure justified only by the truth of the public statement, the statement is deemed as made to such purchaser, and for the purpose of inducing his purchase. If false, it was fraudulent. The purchaser had two remedies open to him. One was an action in equity for rescission. The other was for damages for the deceit. * * * In the one, he elects to hold the thing purchased, and sues to recover the difference between the price paid for it, and its value in its true condition as of the date of the purchase, with interest in the discretion of the jury."

We are unable to perceive any difference in principle between the law applicable in that case and this. In that case it was held that a director was liable in damages to a person who had purchased stock from him upon the faith of statements as to the condition of the corporation, which were false—the court citing with approval the Allen case, holding that a director in a corporation must exercise reasonable diligence to ascertain the condition of the corporation and must be presumed to know all the facts which ordinary diligence would

have made known to him, and that he could not close his eyes to the existence of facts which he ought to know. In the case before us the Court instructed the jury in accordance with the principles announced in the two cases mentioned. The liability of a director should certainly not be less where he makes a personal statement upon the faith of which he is enabled to sell his stock than it is in a case where he is enabled to sell it by reason of a signed statement issued by him to the public.

Finding no error in the record the judgment is affirmed.