## Glover Machine Works v. Cooke-Jellico Coal Company.

(Decided February 6, 1917.)

### Appeal from Bell Circuit Court.

1. Sales—Warranties.—Where machinery is manufactured for a specific purpose of which the seller and manufacturer has knowledge, and the buyer reposes trust and confidence in the seller that the latter will so construct the article as that it will perform the work intended with proper management, the law implies a warranty that the purchased article will do the work for which it was intended.

2. Sales—Warranties.—Such implied warranty has no greater force than an express one, and under it the purchaser of the manufactured article will have a reasonable time in which to test its work, and it is his duty to inform the seller of the failure, if any, within such time; but this will be excused if the seller continues to promise to repair the article or remedy its defects so as to make it work properly.

3. Sales—Rescission—Damages.—When the conditions above have been observed by the purchaser he has two remedies, one to rescind the contract and recover the price paid, as well as proper damages; the other to recover the ordinary damages for breach of contract, but to entitle him to the action for rescission he must either return, or offer to return, the purchased article within a reasonable time after the seller has abandoned all effort to repair it, and this prerequisite must be observed by the purchaser, unless the purchased article is so defective as to be worthless for any purpose.

4. Sales—Breach of Warranty—Damages.—In a suit to recover the
balance of a purchase price the counter-claim seeking to cancel
the contract and to recover the purchase money paid because of
a breach of the implied warranty is in all of its essentials a pro·
ceeding by the counter-claim to rescind the contract, and unless
the conditions have been complied with entitling the defendant to
this remedy, it .cannot be allowed to him, but he is relegated to
his rights to recover damages for the ordinary breach of warranty.

SAMPSON & SAMPSON and FORREST ANDREWS for appellant.

T. G. ANDERSON for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

The appellant (plaintiff) is a corporation, and is en-
gaged in manufacturing locomotive engines and per-
haps other machinery, and it is located at Marietta,
Georgia.  The appellee (defendant) is likewise a cor-
poration, and operates a coal mine in Whitley county,
Kentucky.

The distance from defendant's mine entry to the
railroad over which it shipped its output is between
2,500 and 3,000 feet; 1,500 feet of this distance is
through a tunnel.  It hauled its coal in small mine cars
over a track running through the tunnel, the track be-
ing something near a two and a half per cent. grade from
the mouth of the mine entry to a considerable distance
into the tunnel.  These cars were drawn by mules, and
with a view of increasing its hauling capacity and
thereby enlarging the output of its mines, the defendant
conceived the idea of abandoning the use of mules and
substituting therefor a locomotive steam engine.

While this plan was being considered, the defendant
obtained a catalogue of the plaintiff, and in it was the
advertisement of an engine measuring up to practically
the kind defendant thought would meet its require-
ments.  This, in the catalogue, is designated illustra-
tion number five.  It had a 7x12 cylinder, which de-
fendant thought was 'too small, it desiring a cylinder
8x14.  The weight of the engine illustrated in the cata-
logue was 18,000 pounds, and it showed that upon a
level it had the capacity to pull, exclusive of its own
weight, on a half per cent. grade, 585 tons; on a one per
cent. grade, 254 tons; on a two per cent. grade, 160
tons; and a three per cent. grade, 89 tons.  It was also
what is known as a saddle-tank locomotive, which was

the kind defendant desired. This means that a receptacle for carrying the water is belted around the top of the boiler in a semi-circular shape, and it was represented to have a capacity for three hundred gallons. There were other representations made in the catalogue which are not necessary to here enumerate.

After considering the illustrated locomotive in the catalogue, defendant opened up negotiations by correspondence with the plaintiff, insisting that it desired the locomotive number 5 but with a cylinder 8x14, not to exceed 6½ feet in width, and 5 feet high. Following some correspondence, the manager of defendant visited plaintiff's plant at Marietta, Georgia, and fully explained precisely what was desired. He was there informed that plaintiff could construct the character of locomotive defendant needed for its particular purpose, and after returning home he gave an order to plaintiff for the remodeled number 5 locomotive which had been agreed upon. This order was accepted by wire, which was immediately followed by a letter altering the specifications somewhat; one particular of which was the height of the engine which plaintiff desired to construct 5½ feet, instead of 5 feet. To assure and guarantee against any mistakes, and to have a perfect understanding, defendant wired plaintiff to send a representative to its mine and look over the situation so as to fully inform himself and be prepared to construct the locomotive so that it would perform the duties for which it was being purchased. Following this, Mr. Glover, president of the plaintiff, visited defendant's mine, and while there went entirely over the haul-way from the mine entry to the railroad, including that part of it running through the tunnel, and he then agreed that it was perfectly feasible to construct the character of locomotive which defendant desired. This visit was made on April 13, 1912, at which time the contract for the locomotive was approved in writing by the plaintiff, and was signed by the defendant, although it had been dated April 3, 1912, being the date upon which defendant wrote its letter authorizing plaintiff to construct the locomotive. The price agreed to be paid for it was $2,000.00, $250.00 of which was paid on the date of the order, $250.00 on the date of shipment, and three notes for $500.00 each, due in three, six and nine months executed for the balance, bearing date of the first order. The locomotive

was agreed to be delivered within thirty days, but it was not done until July 4, 1912.

After the return of Mr. Glover from his visit to the mine, on April 13, he furnished to the defendant blue prints to assist it in enlarging the tunnel so as to receive the locomotive, and making other repairs to its track necessary for its operation. Defendant constructed a wooden engine of the same dimensions of the one it had ordered, which it used in fixing the tunnel, according to instructions given to it by plaintiff. Plaintiff was likewise furnished with the character of coal cars used by the defendant, their height, etc., which it claimed was necessary to enable it to construct the locomotive so as to obtain the best results and give entire satisfaction.

After the locomotive was received it was installed, but it was soon discovered that it would not do the work for which it was purchased. It fell far short of hauling the tonnage it was represented to haul in the negotiations for its purchase. The tank had a capacity for only fifty gallons, instead of three hundred. The draft was so poor that a fire could not be started in the engine without a false chimney, which could not be used through the tunnel. Other parts of the engine, which it is not necessary to here enumerate, refused to work or to perform their functions, notwithstanding, according to the proof, a competent man was in charge of the locomotive. Complaints were promptly made, and promises of repair were received by defendant from plaintiff, until finally, at the request of plaintiff, defendant sent an expert to see if it was possible to remedy the defects. This expert remained at defendant's mine but a short while, becoming convinced that it was impossible for him to remedy the defects so as to make the locomotive perform the work for which it was purchased, and he returned, leaving conditions as he found them. Correspondence regularly continued between the parties in regard to the matter until the first $500.00 note became due. Under promise of plaintiff to put the locomotive in the condition called for in the contract, that note was paid. Matters grew worse, instead of improving, and when the second note became due, plaintiff declined to pay it, and after the maturity of the third one this suit was filed on the two unpaid notes, amounting to $1,000.00.

The answer, as finally amended, sought a cancellation or rescission of the contract upon the ground that in manufacturing and selling the machinery to it by plaintiff, there was an implied warranty on its part that the locomotive would be suited for and would perform the work for which it was purchased; that there had been a total failure in this respect, and it sought to recover by way of counter-claim the $1,000.00 which it had paid, and $500.00 which it claimed to have spent in preparing the tunnel and its track for the use of the locomotive, which item it insisted was entirely unnecessary and of no use to it except in so far as it might be able to operate the locomotive.

A trial of the case resulted in a verdict for the defendant for the $1,000.00 which it had paid, and for the $500.00 claimed as damages, upon which judgment was rendered, the petition dismissed, and to reverse the judgment this appeal is prosecuted.

The rights of the parties are dependent upon whether, under the facts, the law would raise an implied warranty on behalf of plaintiff that the locomotive purchased by defendant was suitable for, and would, under proper management perform the work to which it was to be applied. The rule of law upon this subject seems to be thoroughly settled, perhaps as much so as it is possible to settle any rule of law governing transactions between individuals. Generally speaking, if a purchaser buys an article which can be ordinarily obtained upon the market, and without informing the seller as to the particular use which is expected to be made of it, and when the purchaser is ordinarily acquainted with the character of work performed by such article, there will be no implied warranty of the fitness of the thing purchased. When, however, the purchase is made for a particular purpose which is made known to the seller, especially if he manufactures it, with the information as to the use which the buyer expects to make of it, and the work which the latter expects the article to accomplish, there will arise an implied warranty of the fitness of the article, under proper management, to perform the work expected of it. This rule is fundamental, and is found in all the text-writers upon the subject, and has been uniformly adhered to by this court. Some of the text-books, as well as opinions from this court holding to the rule as indicated are: 35 Cyc. 399-402;

Miller v. Gaither, 3 Bush 152; American Radiator Co. v. McKee, 140 Ky. 105; Marbury Lumber Co. v. Stearnes Mfg. Co., 32 Ky. Law Rep. 789; International Harvester Co. of America v. Bean, 159 Ky. 842; Clark v. Johnson Foundry & Machine Co., 19 Ky. Law Rep. 973; Benjamin on Sales, second edition, page 631.

In the instant case the plaintiff was an expert in the construction of locomotives, and made this business a specialty. Neither the defendant nor any of its officers had ever used or operated, or, so far as the proof shows, had ever seen such an engine in operation. They were entirely ignorant as to the capacity of the engine, or the work which it would do. The evidence leaves no doubt in the mind but that defendant trusted entirely to the judgment of the plaintiff, who, as we have seen, was in possession of all the facts, and knew full well the physical conditions and surroundings.

In the Clark case, *supra,* in stating the doctrine of the law now under consideration as embodied in a quotation from Benjamin on Sales, it is said:

"Where a dealer contracts to supply an article in which he deals, to be applied to a particular purpose, so that the buyer necessarily trusts to the judgment or skill of the dealer, there is an implied term of warranty that it shall be reasonably fit for the purpose to which it is to be applied."

In the Marbury case the facts bear an almost complete parallel with those furnished by this record. The similarity extends even to the identity of the article purchased, it being a locomotive engine which the lumber company purchased from the manufacturing company, to be used for the purpose of hauling lumber over a dinkey track. The contract was entered into in that case by correspondence. We do not find from the record where a representative of the manufacturing company visited the place, as occurred in this case now under consideration. The engine did not perform the work, and when sued for the price, the lumber company was permitted to rely on the breach of an implied warranty that the locomotive would perform the work for which it was purchased. This court, in approving the rule, quoted from the Clark case and Benjamin on Sales, the excerpt which we have above made. The same approval of the rule by quoting the same excerpt was made by this court in the Bean case, *supra.* The rule is an

equitable, just and sound one, and has for its purpose the promotion of fair dealing between contracting parties, and we apprehend that there can be found no authority denying its application under facts out of which it grows.

It is insisted by plaintiff, however, that it did not manufacture or sell the locomotive in question for a specific prupose, but on the contrary it agreed to furnish certain machinery which is set forth in the writing termed the contract, dated April 3, 1912, but approved April 13, following, in which there is a clause saying in substance that all previous communications and propositions are merged in that writing, and that nothing can be considered as a part of the contract which occurred previous to April 3 of that year. This contention would eliminate entirely the doctrine of implied warranty, because it has no application except in the absence of an express warranty upon the particular subject matter of the warranty. The writing in question contains no express warranty. It is silent upon the subject, thus presenting such conditions as that the law creates, if the facts justify it, the implied warranty which we are now considering. There can be no doubt but that the plaintiff knew the purpose for which the locomotive was being purchased, and the use to which it was to be put, and having manufactured the article with this knowledge and in the absence of any express warranty, the occasion for the application of the doctrine of implied warranty is completely furnished. Clearly the plaintiff, under the facts of this case, is to be charged with a warranty, imposed by law, that the locomotive which it manufactured for, and furnished to, the defendant, would, with proper management, fill the purposes for which it was bought.

The question then is: What are the rights of the parties under the implied warranty? There are many cases from this court, as well as from others, discussing the rights of parties under various kinds of warranties. It might be here added that the rule of law creating an implied warranty goes no further than to create it. It makes a warranty under certain conditions when none is contained in the stipulations of the parties. This is all, and such warranty is to be treated, in adjusting the rights of the parties, as though it were an express one.

Generally speaking, express warranties stipulate what the warrantee shall do in case of a breach, and if he should fail to perform his agreement relative thereto, and such performance should not be waived, he would lose his rights thereunder. This has been so held many times by this court, and to enumerate the cases so holding would not serve to elucidate the question involved here, and no useful purpose could be served by doing so. The rule, however, is universal, in the absence of stipulations to the contrary, that there are two remedies open to the warrantee upon breach of warranty, they being: (1) to return the property and sue for a rescission of the contract; or, (2) he may retain the property and recoup his damages for the breach of warranty in an action by the vendor for the price. Indeed, it is so expressly held by this court in the case of Hauss v. Surran, 168 Ky. 686, where in the opinion it is said:

"But where the sale is executed and the provision of the contract is not imperative, but merely permits the buyer to return the property, he may, at his election, resort to that remedy, or he may retain the article and recoup his damages for the breach of the warranty in an action by the vendor for the price. Shupe & Co. v. Collender, 57 Conn. 489; 15 Atl. 405; 1 L. R. A. 339; Ellwood v. McDill, 105 Ia. 437; 75 N. W. 340; Cook v. Gray, 2 Bush 121; Harrigan & White v. The Advance Thresher Co., 81 S. W. 261, 26 R. 317; Ruby Carriage Co. v. Kremer, 81 S. W. 251, 26 R. 274. Unless the article is absolutely worthless for every purpose, the buyer cannot recover the price unless he returns the article, or offers to return it."

These two remedies of the warrantee are recognized by all of the authorities.

The defendant in this case by its counter-claim sought the application of the first remedy, *supra*, in that it asked for a cancellation of the unpaid notes and a recovery of that part of the purchase price which it had paid, together with damages which it incurred in an effort to install the locomotive. This is essentially a rescission of the contract. Such relief looks to the placing of the parties *in statu quo*. Its purpose is to restore the parties, or at least the defendant, in the condition which he occupied before the contract was entered into. The rule is without exception that to entitle him to such relief he must return, or offer to return, the

thing purchased. If there is a time fixed in the contract for this to be done, it must be exercised within that time, but if no time is fixed, the offer must be made within a reasonable time, unless the right to insist upon it has been waived by the seller. Clark v. Johnson Foundry & Machine Co., *supra;* Dick v. James Clark, Jr. Electric Co., 161 Ky. 622. Many other authorities might be cited, but we deem it unnecessary.

Another rule dispensing with the necessity of returning the article purchased is that if the article is worthless for any purpose, no return, or offer to return, is required. It is stated in 35 Cyc. 436, thus:

"But in order to bar a recovery of the price, the goods must have been returned, or tendered, unless they are worthless for any purpose, as it is not sufficient that they are worthless for the particular purpose for which they were sold." Hauss v. Surran, *supra;* McCormack Harvesting Machine Co. v. Arnold. 116 Ky. 508; Miller v. Gaither, 3 Bush 152; Ruby Carriage Co. v. Kremer, 26 Ky. Law Rep. 274; Amer. & Eng. Ency. of Law, first edition, 28-9.

In the instant case there was no tender of the locomotive to the plaintiff, or an offer to do so. It was used up to and for some time after the filing of the suit, but this user until a short while before the filing of the suit was excused by the plaintiff continuing to promise to make it good. After it became known that the plaintiff would insist upon the collection of the balance of its purchase money, and that it had virtually abandoned all effort to repair the locomotive so as to make it conform to the contract, if the defendant had desired to keep alive its remedy of rescission, it should have returned the locomotive to the plaintiff, or should have offered to do so. Failing in this, it cannot be permitted, under the principles of law to which we have adverted, to insist upon a cancellation of the contract and a restoration to it of the purchase price which it had paid.

Under the second remedy, *supra,* its right, when sued for the balance of the purchase price, is confined to the damages which it sustained as a consequence of the breach of implied warranty which we have hereinbefore discussed. This damage, according to all rules for the measurement of damages, is the difference between the price agreed to be paid for the locomotive and

its actual value. To be added to this is the amount expended in installing the locomotive, including cash and time consumed. Other items of damage proximately resulting from a breach of the warranty might also be recovered. If the expenses incurred in enlarging the tunnel, or otherwise equipping the track for the use of the locomotive, was for a purpose which without the engine would be of no benefit to the defendant, then the entire amount thus expended is a legitimate item of recovery. If, however, the track, including the tunnel in its altered condition, is of any permanent benefit to the defendant, the expense of putting it in condition should be reduced by whatever value the altered condition is worth to it. If it suffered loss in the output of coal, and which was reasonably within the contemplation of the parties, this, too, might be taken into consideration.

In denying the defendant the right to a rescission of the contract we have necessarily determined that the proof fails to show that the engine is worthless for any purpose so as to excuse an offer to return it. It is not sufficient, under the rule, that it should be worthless for the particular purpose. In all probability the locomotive, with some slight alterations, may have been of considerable value under other conditions, and upon tracks differently constructed.

Our conclusion then is that the defendant having kept and used the locomotive and failing to return, or offer to return it, cannot insist on recovering by its counter-claim, founded on a breach of the implied warranty, the part of the purchase price paid. To permit it to do so would ignore the required condition precedent to the right of rescission. The counter-claim should have been confined to the recovery of damages for breach of the implied warranty, the sum to be measured as hereinbefore stated. Upon a return of the case defendant should be permitted to amend its pleadings so as to conform to the views herein expressed.

Wherefore, the judgment is reversed, with directions to proceed in accordance with this opinion.