## Nichols & Shepard Company v. Dudderar.

(Decided June 13, 1919.)

### Appeal from Garrard Circuit Court.

1. Sales—Warranty of Quality.—Where a written contract for the sale of a traction engine contained a warranty of quality but upon condition that the purchaser give notice of the defect within five days and return the defective part, and before delivery to the purchaser or execution by him of the purchase notes, he gave notice to the company of a defect in the boiler and an agent of the company the next day came and induced him to accept the engine and execute his notes therefor on faith of a special warranty, the latter warranty controlled if the agent had the authority to make it, and this question of fact being at issue on conflicting evidence was properly submitted to the jury.

2. Sales—Contract of Sale—Warranty.—Where the sale is executed and the provision of the contract is not imperative but merely permits the buyor to return the property, he may at his election resort to that remedy or he may retain the article and recoup his

damages for the breach of the warranty in an action by the vendor for the purchase price.

BAGBY & HUGUELY, C. C. BAGBY and G. CLAY WALKER for appellant.

J. E. ROBINSON and L. L. WALKER for appellee.

OPINION OF THE COURT BY JUDGE CLARKE—Affirming.

Appellant instituted this action to recover of appellee $1,000.00, the aggregate of four notes executed by him as deferred payments on a rebuilt traction engine purchased of appellant.

As a counterclaim the defendant asserted damages in the sum of $1,000.00 for breach of the following special warranty:

"If the boiler on the 20 horse power double cylinder traction engine, bought by David Dudderar from Nichols & Shepard Company is defective, the Nichols & Shepard Company agrees to furnish him a boiler without any defect.

"NICHOLS & SHEPARD COMPANY,
"By E. B. RAY.

"This June 18, 1914."

In its reply the plaintiff denied the authority of Ray to execute this warranty; set up the original contract executed by the parties on April 16, 1914, which provided that a failure to return defective parts within a specified time was a waiver of all warranties therein, and alleged a failure to return the boiler and also the execution of a "satisfaction slip" as estoppels of the claimed breach of warranty.

In response to this reply the defendant admitted failure to return the engine, and alleged that the "satisfaction slip" was procured by fraud, which fraud was denied by the plaintiff in an appropriate pleading. The trial resulted in a judgment and verdict in favor of the defendant on his counterclaim for $600.00, from which the plaintiff is appealing.

Although numerous grounds were set up in the motion for a new trial, the only error relied upon for a reversal is the refusal of the court to direct a verdict in favor of plaintiff on the defendant's counterclaim. This failure it is insisted was error for two reasons: First, because Ray was without authority to execute the special war-

ranty dated June 18, 1914, and second, the defendant's failure to return or tender back the engine or the alleged defective boiler, was a waiver of all warranties, both those contained in the original contract and in the special warranty of June 18, 1914, if the latter should be held binding on the company.

1. The original contract between the parties executed on April 16, 1914, obligated the plaintiff to deliver and the defendant to accept a described rebuilt traction engine at Lancaster, Kentucky, on or about June 1, 1914. When the engine arrived at Lancaster on June 17, 1914, the defendant, after an examination by himself and others, whom he procured to make an examination thereof, declined to accept it upon the ground the boiler was not as represented, and gave notice thereof to the plaintiff by telegram to its home office at Battle Creek, Michigan, and by telephone and letter to its district office, at Nashville, Tennessee. These notices were sent by him on the morning of June 17; early the next morning, June 18, Mr. Ray, who lived at Lebanon, Kentucky, and who was the sales agent of the defendant, under its district manager, located at Nashville, Tennessee, with whom the defendant had made the contract for the purchase of this engine, arrived in Lancaster, and to him the defendant also gave notice that the boiler on the engine was defective, and that he would not receive the engine. Ray tried to induce the defendant to accept the engine, assuring him the boiler was not defective, and that if it was the warranties in the original contract afforded him full protection. The defendant, however, still refused to accept the engine under the warranties of the original contract, and until he was given by Ray the special warranty with reference to the boiler. This is admitted by Ray, but he denies that he had authority to execute or deliver the special warranty or to alter in any way the original contract between the parties. The defendant, however, testified that when Ray came to him the next day after he had notified the company both at its home office and district office that he would not accept the engine, Ray told him that he had come in response to directions from Mr. Peyton, whom it is admitted is the company's district manager in charge of the Nashville office, for the purpose of adjusting the trouble with defendant. Upon this testimony the court submitted to the jury by an instruction

which is not criticised, the question whether or not Ray had authority to execute the special warranty, which was the inducement upon which defendant accepted the engine and executed his notes therefor.

That the evidence was sufficient to raise an issue as to whether or not Ray had authority to execute the special warranty does not seem to us open to doubt. Ray was an agent of the company with authority to make sales for it. The defendant had refused to accept the engine and after notice of that fact, Ray appeared upon the scene and, acting for the company, completed the sale. In doing so he was certainly acting within the apparent scope of his authority. Moreover, the company accepted the result of the work he performed for it and in this action is attempting to enforce against defendant the notes Ray procured for it by executing the special warranty without which there would have been no notes executed by the defendant.

The original contract notified the defendant that "after the machinery mentioned herein is delivered to the purchaser all subsequent contracts relating thereto or in any wise affecting this warranty or the return of the machinery thereunder, must be in writing and must in order to bind the vendor, be signed by its president," and that "no representations or guaranties have been made by the salesman of Nicholas & Shepard Company which are not herein expressed," but these provisions plainly apply only where there has been a delivery under the original contract, and have no reference whatever to such a state of case as we have here where the original contract was repudiated by the purchaser before acceptance. We had a very similar question before us involving the same kind of a contract and this plaintiff, in Nichols & Shepard Co. v. Caldwell, 80 S. W. 1099, the only difference being that in that case the authority of the agent was admitted and the supplemental contract was denied, while here the contract is admitted but the authority of the agent denied. In that case we upheld the modification of the original contract, although the new agreement was not in writing and signed by the company's president, because the contract was completed and the notes of the purchaser procured as the result of the modification made by an agent acting within the apparent scope of his authority. Whether or not Ray had the authority to

make the special warranty before delivery was a fact about which the evidence was conflicting and therefore a question for the jury.

2. If Ray had the authority to make this special warranty, there can be no doubt that this warranty superseded the conditional warranty in the original contract, so far at least as the boiler is concerned. The special warranty is by its terms unconditional and obligated the plaintiff to replace the boiler if it was defective, and was made to the defendant with knolwedge that he at the time he accepted the engine, claimed it was defective, and not only was the warranty given with the knowledge upon the part of the plaintiff that the defendant claimed the boiler was defective, and with knowledge of the particular respects in which the defendant then and now claims that it was and is defective, but when the first of defendant's notes became due, and upon receiving notice of that fact, he wrote the company the following letter:

"Lancaster, Ky., Oct. 9, 1914.

*"Nichols & Shepard Company, Nashville, Tenn.*

"Dear Sirs:—In regard to the boiler I bought from you was leaking when it came and under our contract it was to be O. K. I am ready to pay you when you make this boiler right. Please send some one to adjust this matter. I am ready to pay when made satisfactory.

"Dave Dudderar."

So the company not only knew at the time the defendant accepted the engine he was claiming that the boiler was defective, and that he accepted it only upon agreement that if defective it would be replaced by one that was not defective, but it was also informed by the defendant immediately after the first note became due, that the defendant still claimed that the boiler was defective, and refused to pay therefor until it was made satisfactory, and it was not misled in any way by either act or deed of the defendant as to the condition of the boiler, unless by the execution of the "satisfaction slip," and there was clearly proof enough as to whether or not that was procured by fraud to carry that question to the jury, since even Mr. Ray, while denying the defendant's testimony that this paper was not read by or to him, admits that the defendant refused to sign it until Mr. Ray had assured him it did not waive his warranty.

Therefore the only question remaining is whether or not as a matter of law, the defendant waived or is estopped to claim the benefit of the special warranty by failure to return or tender back the boiler. The rule was thus stated in Hauss v. Suran, 168 Ky. 686, L. R. A. 1916 D. 997:

"But where the sale is executed and the provision of the contract is not imperative but merely permits the buyer to return the property he may, at his election, resort to that remedy, or he may retain the article and recoup his damages for the breach of the warranty in any action by the vendor for the price." See also Cook v. Gray, 2nd Bush 121; Harrigan & White v. Advance Threshing Machine Co., 81 S. W. 261; Ruby Carriage Co. v. Kremer, 81 S. W. 251; Glover Machine Works v. Cook Jellico Coal Co., 173 Ky. 675, 191 S. W. 516.

There was no provision is this special warranty which alone controls with reference to the boiler, making it imperative upon the defendant to return the property or even suggesting the necessity therefor, and he therefore, under the above authorities, had the right to retain the engine and recoup his damages for the breach of the warranty in this action by the plaintiff for the purchase price. It is therefore apparent that the court did not err in refusing to direct a verdict for the plaintiff upon defendant's counterclaim, as the evidence was ample to warrant a submission to the jury as to whether or not Ray had the authority to execute the special warranty upon which the defendant relied and the failure of the defendant to return the defective boiler did not preclude his right to recoup his damages for the breach of the warranty.

Wherefore, the judgment is affirmed.