## Ades v. J. T. and Mary E. Wash.

(Decided June 12, 1923.)

### Appeal from Franklin Circuit Court.

1. Fraud—Remedies Available.—Ordinarily, where a written contract of sale is obtained by fraud, the injured party has the option to tender back the property received, and seek a rescission of the contract, or to affirm the contract and seek damages for his injuries, either by an action for deceit, or by way of counterclaim in a suit to enforce the contract.

2. Action—Fraud and Breach of Warranty May be Relied on in Same Pleading—With some exceptions, such as sale by sample, warranty of quantity, etc., where notice is essential, the same principles apply to a buyer's remedy for breach of warranty as to his remedy for fraud, and the two remedies may be relied on in the same pleading.

3. Contracts—Fraud in Obtaining as Well as in Executing Contract Invalidates it.—A contract which was procured by fraud is equally as vulnerable as one in which the execution of the contract itself is thus secured.

4. Contracts—Waiver of Fraud Rarely Found in Cases of Executed Contract.—Though an injured party, who has full knowledge of the fraud, may by his action and conduct waive the fraud, that

rule would apply only in an extreme case if the contract was executed.

5.  Evidence—Parol Evidence is Inadmissible to Show Warranty Not Included in Written Contract of Sale.—Where a contract for the sale of a stock of merchandise was in writing, parol proof is inadmissible to establish a warranty not contained in the writing, even though it was not inconsistent with the terms of the writing.

6.  Evidence—Parol Evidence is Admissible Only if Writing is Unintelligible Without it.—Parol evidence is admissible in connection with a written contract only when the writing purports to express only part of the contract or is expressed in such short and incomplete terms as to render parol evidence necessary to explain what is per se unintelligible.

7.  Evidence—Written Contract for Sale of Business held to Exclude Parol Evidence of Warranty.—A written contract for the sale of stock of merchandise and fixtures for a price stipulated therein, which is clear and unequivocal in its language and complete in itself, renders parol evidence inadmissible to show a warranty not contained in the contract.

8.  Sales—Failure to Notify Adverse Party Does Not Bar Counterclaim for Fraud as a Defense.—The failure of the buyers seasonably to notify the seller of the discovery of a shortage in the quantity of goods as represented by the seller, though it would have barred a suit for rescission on the ground of fraud, does not of itself bar a defense to an action on the purchase-money notes.

9.  Sales—Knowingly False Statement of Fact is Essential to Establish Fraud in Sale of Stock of Goods.—To establish fraud in the sale of a stock of merchandise and fixtures, it must be shown that the seller knowingly made the false statement of the amount of goods as a matter of fact and not of opinion, and that the false statement induced the contract.

10.  Sales—Evidence Held to Show Fraud in Sale of Goods.—In an action on notes for the purchase price of a stock of merchandise, evidence held to sustain the defense that the seller misrepresented the quantity of goods in the stock as a fact, and that the buyers relied upon misrepresentation without taking an invoice.

11.  Sales—Statement as to Quantity of Goods in Stock Held Statement of Fact.—Where a wholesale merchant had taken over a retailer's stock of goods, and operated the retail store as a separate business for a time before he sold it to defendants, statements made by him as to the quantity of goods in the store at the time he sold to defendants, a few months after he had taken an inventory, were statements of fact and not of opinion.

12.  Appeal and Error—Chancellor's Findings on Conflicting Evidence Entitled to Weight.—Where there is a conflict of evidence, the opinion of the chancellor is entitled to some weight.

13.  Sales—Evidence to Establish Fraud Must be Clear and Convincing. —Evidence to establish fraud by the seller in misrepresenting the quantity of a stock of merchandise sold to defendants must be clear

and convincing to establish a defense to an action on the purchase-money notes.

T. L. EDELEN and J. S. BOTTS for appellant.

LESLIE W. MORRIS for appellees.

|OPINION OF THE COURT BY JUDGE McCANDLESS—Affirming.

David Ades is a wholesale merchant in the city of Lexington. A retail dealer in that city owed him a debt and to collect this he took over the latter's stock of goods and ran the business himself, doing this by agents and clerks and continuing to furnish goods to that store from the wholesale establishment, charging them as he would have done if it had constituted a separate firm.

In August, 1916, he sold this stock of goods and fixtures to Mrs. Wash, she agreeing to pay him therefor $5,833.00. There was a cash payment on the merchandise and a number of deferred purchase money notes secured by mortgage on land.

This suit was brought in August, 1918, to recover on three notes for $1,575.00 and to enforce a lien on certain lands in Franklin county. The defendants filed an answer admitting the execution of the notes and pleading breach of warranty and deceit as a counterclaim, it being alleged that at the time of the execution of the contract and prior thereto the plaintiff had represented to them that he had taken an inventory of the stock and fixtures a short time previously, and that there was at that time $5,833.00 worth of goods in the store; that they relied on such representations and were thereby induced to make the purchase contract, but that same were false and untrue and so known to be by plaintiff; that in fact and in truth there was only $3,255.00 worth of goods in the store at that time and they sought damages for the difference, or $2,577.00.

The court dismissed plaintiff's petition and gave defendants judgment for the sum of $1,002.80, this being the full amount claimed, and plaintiff appeals.

The appellant says that he had not invoiced the goods prior to the sale and did not know their value. The store owed the wholesale house the sum of $5,833.00, and he wanted to realize from the sale the amount of his debt, and so told defendants, but did not state the value of the goods, or mention a prior invoice. He was perfectly willing for them to invoice or take any steps they wished

to ascertain the value of the stock, but was holding it for what the store owed him and was unwilling to take less. This was fully understood by defendants, who saw the goods, and went to his wholesale house and examined the books to see the amount of the indebtedness. He did not know that they were claiming a shortage of the goods until this suit was filed, nearly two years afterward. It is shown by his bookkeeper that he pointed out the amount of the indebtedness to Mr. Wash, and another witness states that Wash told him that he purchased the goods at the amount of the indebtedness.

On the other hand the appellee, Mrs. Wash, states that appellant told her he had taken an invoice and that he had about $6,000.00 worth of goods. On a second occasion he stated the amount as $5,833.00, and he was sure they were there. She had no previous experience in the business and relied on his statements. The husband of the appellee testified that he acted as his wife's agent at times when she was not present and that appellant told him he had invoiced the goods some time in May. He did not tell him what the invoice was and said that he would sell them at what his wholesale books were with the house, at what the store owed him for goods at the time he made the transfer.

Further, in answer to another question, he said: "When we were about to close the trade the books showed the house owed him $5,833.00." Q. "What else did he say?" A. "Well, he said the goods were there, and I said to him that this is a little unusual way to buy goods without invoicing, but he said he knew the goods were there." Q. "How much goods did he tell you was in the store at the time the books showed $5,833.00 in debt?" A. "He said the amount of the debt corresponded with the goods."

He gives as the reason for taking the goods without an invoice, that the appellant proposed if he would take his invoice that he would accept back as much as $800.00 or $1,000.00 of unsalable goods the 1st of January, and that they believed the goods were there and took him at his word. He had some experience in other lines, but knew nothing of dry goods.

It is further shown that shortly after taking possession of the stock the appellees became suspicious of the deal and took an invoice at wholesale cost, which, together with the amount of their total sales up to that period, amounted to $3,255.00, but they gave no notice of

this to appellant and withheld all knowledge of it from him until, as they say, in the spring and continued to pay on the installment notes until the spring of 1917.

One witness states that she clerked for appellant prior to the sale and that she knew the wholesale cost mark of the goods; that there was an invoice taken about the first of May, but she did not know the amount of it, although she gives the names of three or four employes who assisted in taking the invoice. Only one of these testified. He denied that this young lady knew the cost mark but did not deny that the invoice was taken. One of appellant's witnesses, Lingenfelter, who testified as to negotiating for the purchase of same just a few weeks before Wash's purchase, admitted that appellant told him that there was about $3,000.00 worth of goods on hand, but says that he wanted the amount of his debt for it, although he did not say how much that was. He states, however, that the stock was increased soon after that but could not say how much. The appellant did not introduce his bookkeeper to show any new purchases by the store during that period.

Ordinarily where a written contract is obtained by fraud the injured party has his option to tender back the property received and seek a rescission of the contract, or he may affirm the contract and seek damages for his injuries either by an action for deceit or by way of counterclaim in a suit brought to enforce the contract. 13 C. J., sections 304-5-6-7 and 682-7; Long v. Douthitt, 142 Ky. 431; Lignon v. Minton, 125 Ky. 304. With some exceptions, such as sale by sample, warranty of quantity, etc., where notice is essential, the same principles apply to breaches of warranty. Hass v. Surron, 168 Ky. 690; G. M. W. v. C. J. C. Co., 173 Ky. 675; Williams v. Shepherd, 181 Ky. 538; Nichols & Shepherd v. Dudderar, 184 Ky. 689. Both deceit and breach of warranty may be relied on in the same pleading. Jones v. Johnson, 10 Bush 652; Gregory v. Woods, 3 Rep. 527.

If the defense is fraud it is equally applicable to those cases in which the fraud was practiced in the obtention as well as in the execution of the contract; that is, the writing may have been fully understood and voluntarily executed by the parties, yet, if it was procured by fraud, it is equally as vulnerable as one in which the execution itself is thus secured. Western Mfg. Co. v. Cotton & Long, 126 Ky. 749; Smith & Nixon v. Morgan, 152 Ky. 430.

An injured party who also has full knowledge of the fraud may by his action and conduct waive the fraud and be denied a recovery, but in an executed contract such as this it would require an extreme case for its application.

Another question arising in this case is as to the admissibility of parol evidence to show a contemporaneous warranty not set out in the written contract.

In some jurisdictions it is held that if the alleged warranty does not contravene or vary the written contract, and is not inconsistent with its terms, parol proof is admissible to establish it. A number of cases in support of this position are cited in a foot note to E. S. B. Co. v. W. C. F. & N. R. Co., 19 L. R. A., page 1183, but a reference thereto will show that this is opposed to the great weight of authority, citations of the opinions on both sides being given.

In this state the doctrine has been stated thus:

"It is a well settled rule that where parties have deliberately put their contract in writing it is conclusively presumed that their whole engagement was reduced to writing, unless from the form of the instrument this does not appear to have been the intention of the parties. Parol evidence of previous or contemporaneous negotiation will not be admitted to vary the terms of the written agreement, in the absence of fraud or mistake, for the previous verbal negotiations are merged in the writing." Worland v. Secrest, 106 Ky. 715. To the same effect are Varney Electric Supply Co. v. Carter, 133 Ky. 93; Crain v. Williamson, 111 Ky. 276.

Again, when a writing only purports to express part of a contract or is expressed in such short and incomplete terms as to render parol evidence necessary to explain what is *per se* unintelligible and the proposed evidence is consistent with the terms of the writing, it is admissible but not otherwise. Castleman, Blakemore Co. v. Pickrell Craig Co., 163 Ky. 755; Fairbanks Morse Co. v. Manning & Combs, 164 Ky. 483.

Applying the law to the facts, the written contract contains no warranty of quantity or value; it is clear and unequivocal in its language and complete in itself, hence parol evidence is inadmissible to show a breach of warranty or to otherwise enlarge its provisions.

On the question of fraud, while the conduct of the appellees in failing to seasonably notify appellant of the discovery of the alleged shortage would have barred a

suit for rescission, it does not of itself bar this defense. Head v. Oglesby, 175 Ky. 618.

To recover on this claim, however, the appellant must have knowingly made a false statement of the amount of goods in the house, as a matter of fact and not of opinion, and this must have induced the contract. If the goods had been owned by another the appellant would reasonably have wanted his debt only, but as the owner in possession it is unnatural and unreasonable for him to have sold them in ignorance of their value. The evidence indicates that this stock was invoiced in May, and that appellant told Lingenfelter a short time before the sale to Wash that there were $3,000.00 of goods in the store, and this is approximately the amount of Wash's invoice. There is evidence that new goods were taken in between these dates, but appellant introduces no bill from either of the stores to corroborate this, although he was running both and presumably both had a record of such transactions.

While he denies the May invoice, names were given of three of his employes who assisted in taking it, and none of them denied it. If taken, an experienced business man could, by reference to it and to his records, tell the amount of goods in the store a few weeks thereafter. Appellees were shown to have had some experience in other lines, but none in dry goods. They were over fifty years of age and it would have been unreasonable for them to go in debt to this extent and place in lien everything they owned without some information as to what they were buying. Certainly a mere statement of the amount of the indebtedness did not furnish this information. The reasonable conclusion is that appellant made the statements claimed and that they were untrue and were known to him to be so. Such statements under all the circumstances could not be considered as statements of opinion, but, on the contrary, were statements of a material fact and under the circumstances were of a character upon which appellees were entitled to rely. Their conduct in not earlier informing appellant of the alleged shortage in the goods affects their standing materially, but no estoppel is pleaded, and it is not shown that appellant would have changed his course in any respect if they had done so. If he perpetrated the fraud claimed, he of course knew the value of the articles and it is not shown that he was injured by the course taken. The

chancellor knew some of the parties, and where there is a conflict of evidence his opinion is entitled to some weight, and while in cases of this character the evidence should be clear and convincing in order to grant relief, we are inclined to agree with his opinion.

Judgment affirmed.